1  AZRA MEHDI (SBN 220406)
   azram@themehdifirm.com
2  The Mehdi Firm, PC
   95 Third Street
3  2nd Floor No. 9122
   San Francisco, CA 94103
4  Ph/Fax: (415) 905-8880

5  John C. Herman (*pro hac vice* forthcoming)
   jherman@hermanjones.com
6  Candace N. Smith (*pro hac vice* forthcoming)
   csmith@hermanjones.com
7  HERMAN JONES LLP
   3424 Peachtree Road N.E., Suite 1650
8  Atlanta, Georgia 30326
   Telephone: (404) 504-6500
9  Facsimile: (404) 504-6501

10 *Attorneys for Plaintiffs*

11

12                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
13                        SAN FRANCISCO DIVISION

14

15 Kristen Rivers, individually and as next friend
   on behalf of her minor child V.R., and on behalf      **CLASS ACTION COMPLAINT**
16 of themselves and all others similarly situated,

17              Plaintiffs,                              **DEMAND FOR JURY TRIAL**

18        v.

19 23ANDME HOLDING CO. and 23ANDME,
   INC.,
20
                Defendants.
21

22

23

24

25

26

27

28

By and through their undersigned counsel, Plaintiff Kristen Rivers, individually and as next friend of her minor child V.R. (collectively "Plaintiffs"), and on behalf of themselves and all others similarly situated, hereby files this Complaint against Defendants 23andMe Holding Co. and 23and Me, Inc. (collectively "23andMe" or "Defendants").  The allegations set forth herein are based upon information and belief, developed from the investigation and analysis by Plaintiffs' counsel, including the review of publicly available information, except as to the allegations specifically pertaining to each of the Plaintiffs, which are based on each's personal knowledge.

## I.    INTRODUCTION

1.     23andMe touts itself as having "pioneered direct-to-consumer genetic testing, giving consumers unique, personalized information about their genetic health risks, ancestry, and traits."  March 31, 2023 10-K, p. 6.

2.     By its own admission, 23andMe collects and stores "a large volume" of sensitive personally identifiable information ("PII"), genetic and health information ("PGI"), and other data relating to its customers (PII and PGI are sometimes referred to collectively herein as highly sensitive personal information or "HSPI").  March 31, 2023 10-K, p. 50.  23andMe users entrust Defendants with the same in order to utilize the 23andMe services.  23andMe has a corresponding duty to take reasonable measures to keep the PII and PGI safe and secure.

3.     The HSPI is property owned by Plaintiffs and members of the Class that they shared with 23andMe for a narrow purpose and with the understanding that 23andMe would take reasonable data security measures sufficient to protect their HSPI.

4.     "Biometric data, namely genetic information and health records, is innately identifiable."  *See*  https://iapp.org/news/a/inherently-identifiable-is-it-possible-to-anonymize-health-and-genetic-data/ (last accessed December 15, 2023).  Genetic information, unlike financial information and other types of identifying information, cannot be changed in response to data breaches.

5.     In addition, genetic data also identifies one's familial relationship to others. "Whenever a person makes the choice to publicize their own data, they implicitly publicize data

pertaining to their relatives, as related individuals share portions of their genetic code.  Data from relatives as far removed as third cousins can be used to identify individuals."  *See https://sitn.hms.harvard.edu/flash/2018/understanding-ownership-privacy-genetic-data/*  (last accessed December 15, 2023).  Thus, the threat – and harm – from breaches of genetic data can be significant, with long lasting consequences, even more serious than those of other types of data breaches.

6.     Due to Defendants' inadequate data security and failure to comply with federal and state law and industry data privacy laws, regulations and standards, an unauthorized party gained access to, and then exfiltrated, files and records of 23andMe users and individuals who are relatives and suspected relatives of the same.

7.     The data breach described more fully below affected millions of records and even more individuals.

8.     Due to Defendants' negligence and inadequate data security, Plaintiffs and Class Members have suffered actual harm and are subject to an increased risk of, among other things, identity theft.   The victims must now undertake security measures to minimize the risk of identity theft and other harms.

9.     The HSPI that was compromised in the data breach already has been offered for sale to prospective criminals on the Dark Web.  Certain ethnic and minorities who have been targets of hate crimes have been specifically targeted by the data breach, and the dissemination of their information has put their personal safety at increased risk.  In addition, the data stolen and for sale includes that of minor children, including Plaintiff V.R.

10.     As a direct and proximate result of Defendants' failure to implement and maintain reasonable data security measures, Plaintiffs and members of the Class have been materially harmed, and they have lost the ability to control the use and dissemination of their HSPI.

## II.     JURISDICTION AND VENUE

11.     This Court has jurisdiction under 28 U.S.C. § 1332(d)(2)   The amount in controversy exceeds $5 million, exclusive of interest and costs, and here are more than 100

members in the proposed class, and Plaintiffs and thousands of members of the Class are citizens of states different than those of the Defendants.

12.     This Court has jurisdiction over each named Defendant.

13.     Additionally, this Court has specific jurisdiction over each named Defendant herein because each Defendant is a corporation that conducts business and maintains operations in this District and has purposely availed itself of this jurisdiction by marketing and selling products from California to individuals nationwide.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because: (i) 23andMe maintains executive offices in this District; (ii) one or more of the Defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the events, acts and omissions giving rise to Plaintiffs' claims detailed herein occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## III.   PARTIES

15.     Plaintiff Kristen Rivers is a citizen and a resident of the State of California. She is the natural parent of V.R.  She is a 23andMe account holder whose account was infiltrated by an unauthorized and unlawful third party and whose HSPI was stolen.

16.     Plaintiff V.R. is the daughter of Plaintiff Kristen Rivers and a citizen and resident of the State of California.  Plaintiff V.R. is under 18 years old.  Plaintiff Kristen Rivers brings this action individually and on behalf of her minor child, Plaintiff V.R., as her next friend.  She is a 23andMe account holder whose account was infiltrated by an unauthorized and unlawful third party and whose HSPI was stolen.

17.     Plaintiffs suffered actual injury as a result of the Data Breach (defined below), including, but not limited to: (a) damage to and diminution in the value of Plaintiffs' HSPI; (b) the violation of Plaintiffs' privacy rights; and (c) present and increased future risk of fraud and identity theft.

18.     Defendant 23andMe Holding Co. is a Delaware corporation, with its headquarters and principal place of business located in San Fransisco, California.

19.     Defendant 23andMe, Inc. is a Delaware corporation, with its headquarters and principal place of business located in Sunnyvale, California.

## IV.     FACTUAL BACKGROUND

20.     According to 23andMe, it has more than 14 million customers worldwide. 23andMe's Health + Ancestry and Membership services allow individuals to engage in genetic testing and acquire genetic information from the privacy of their homes.

21.      In order to utilize the various features of 23andMe's website, users must provide Defendants with HSPI.  Defendants collect, for commercial purposes, 23andMe's users' HSPI in order to analyze their DNA and provide insights into users' health, ancestry, traits and more.  Users can choose from different services and features enabling 23andMe to collect and provide information about their genetics, wellness, relatives and family history.

22.     23andMe told users that its services would enable users to: see how their DNA "breaks out across 2500+ regions worldwide with the most comprehensive ancestry breakdown on the market."  Users could "discover relatives from near and far with our DNA Relative Finder."  Users also could "share reports with family and friends" and learn more about their DNA. *https://web.archive.org/web/20230929164849/https://www.23andme.com/en-int/* (last accessed December 14, 2023).

23.     Prior to the Data Breach, 23andMe told its users that it protected their HSPI, stating:

> When you explore your DNA with 23andMe, you entrust us with important personal information.  That's why, since day one, protecting your privacy has been our number one priority.  We're committed to providing you with a safe place where you can learn about your DNA knowing your privacy is protected.

*https://web.archive.org/web/20230929130757/https://www.23andme.com/en-int/privacy/* (last accessed December 14, 2023).

24.     23andMe exhorted its data privacy and security, contending that its "exceeded" industry data protection standards.  23andMe told its users that all "all sensitive information" was

encrypted and that 23andMe conducted "regular assessments" to identify security vulnerabilities and threats. *https://web.archive.org/web/20230929130757/https://www.23andme.com/en-int/privacy/* (last accessed December 14, 2023).

25.     Plaintiffs and Class Members relied on 23andMe's representations that their privacy and HSPI would be kept confidential and maintained securely.

26.     On October 6, 2023, 23andMe posted a blog post stating that account data from users of its platform had been circulating on Dark Web forums after hackers allegedly engaged in a "credential stuffing attack," utilizing recycled logins (password credentials used for more than one website) to gain access to get into 23andMe user accounts.

27.     A cybercriminal going by the alias "Golem" on the hacking forum BreachForums offered to sell the stolen 23andMe user profiles as follows: $1 to $10 per individual: 100 profiles for $1,000; 1,000 profiles for $5,000; 10,000 profiles for $5,000, 10,000 profiles for $20,000 and 100,000 profiles for $100,0000.

28.     The stolen data included users' names, profile photos, genetic ancestry results, dates of birth, and geographical locations.  Journalists were given samples of the stolen data, which included the alleged user data of one million 23andMe users of Jewish Ashkenazi descent.  Another user on BreachForums claimed to have the 23andMe data of 100,000 Chinese users.

29.     23andMe required all of its users to reset their passwords "out of caution" and recommended, but did not require, that they use two-factor authentication.  23andMe also stated that it was continuing to investigate the hack.

30.     Hackers contended that 23andMe's CEO knew about the leaked data two months prior, but failed to disclose the incident.

31.     Some 23andMe users had their accounts accessed directly.  However, others had their information stolen only because they were persons who had opted into 23andMe's "DNA Relative" information sharing.

32.     The DNA Relatives tool compares a user's DNA with the DNA of other 23andMe users who are participating in the DNA Relatives feature.  The number of one's connections – i.e.,

known relatives – Defendants are able to identify through this feature grows as more people join 23andMe and enable this tool.

33.    23andMe contended that only 14,000 user accounts were hacked.  However, even if an account was not itself compromised through the hacks, because a user opted into DNA Relatives and had their DNA Relatives profile attributes shared with accounts that were accessed, a significant array of user HSPI beyond that of an account directly targeted by the breach could be accessed through a single compromised 23andMe account.

34.    Two weeks later, the cybercriminal Golem claimed to have loaded a second batch of stolen profile data from 23andMe, posting the aforementioned to the illegal platform BreachForum.

35.    Golem uploaded 4.1 million records of United Kingdom 23andMe users, again appearing to target ethnic, racial and/or religious groups.

36.    Defendants did not refute Golem's claims and stated that their investigation of the data breach was "ongoing."  Defendants also "temporarily disabled" some of the features within the 23andMe DNA Relatives tool as a security precaution.

37.    Some victims of the data breach did not receive notice that their data was impacted until as much as nearly two weeks after the initial leak of HSPI.

38.    On November 6, 2023, after previously merely recommending that users employ two-factor authentication to secure their accounts, 23andMe began requiring that all new and existing users to login into the 23andMe using two-factor authentication.

39.    In its December 1, 2023 SEC Form 8-K/A, amending its SEC Form 8-K of October 10, 2023, 23andMe stressed that "the threat actor was able to access a very small percentage (.01%)" of "Credential Stuffed" user accounts.  However, by 23andMe's admission, infiltration of that small percentage of accounts yielded the cybercriminal access to the HSPI of 6.9 million 23andMe users, including Plaintiffs'– or nearly half the total number of users on 23andMe's platform (the "Data Breach").

40.     Defendants did not employ security procedures and practices appropriate for the types of data it maintained regarding the users.

41.     Prior to the Data Breach, 23andMe knew, or should have known that there was a foreseeable risk that the Plaintiffs' and Class Members' accounts and HSPI could be accessed, infiltrated, stolen and published if a cyberattack such as the one at issue were to occur.

42.     Moreover, Defendants knew, or should have known, that the DNA Relatives feature, among others, without the requisite controls and security safeguards, created a mechanism by which a cybercriminal would have no need to hack very many accounts to extract significant amounts of HSPI from thousands, if not millions, of additional victims who were 23andMe users.

43.     Further, at all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the HSPI of Plaintiffs and Class Members and the foreseeable consequences that would occur if Defendants' data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of the Data Breach.

44.     Defendant was, or should have been, fully aware of the unique, highly sensitive and personal type and the significant volume of data on Defendants' network, amounting to potentially millions of individuals' detailed, personal, genetic and familiar information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

45.     It is well known that stolen personal information is a valuable commodity for hackers.  An illegal market exists in which criminals openly post sensitive personal information for sale.

46.     Cyberattacks have become so prevalent that the federal law enforcement agencies have issued warnings to potential targets so that they are made aware of an impending attack and can act to take measures appropriate to prepare for and thwart such attacks.

47.     The Federal Trade Commission ("FTC") has repeatedly highlighted the critical need for implementing and maintaining adequate and effective data security practices.  According to the FTC, data security should be factored into all business decision-making, and that companies

should "start with security."  *See https://www.ftc.gov/business-guidance/resources/start-security-guide-business* (last accessed December 14, 2023).  The FTC has promulgated guides for businesses that emphasize the critical importance of their implementing adequate and effective data security practices.

48.     The FTC also has brought enforcement actions against companies that failed to protect consumer data.  For example, the FTC brought an enforcement action against genetic testing company 1Health.io Inc. ("1Health") for failure to take reasonable and adequate measures to protect HSPI, including DNA samples and other genetic information.  A part of the settlement of that action 1Health has been required to strengthen its security practices and protections for its user data.

49.     The HSPI of consumers is of high value to criminals, as evidenced by prices offered through the Dark Web, including those already being offered for the purchase of the Class Members' illegally obtained data.  HSPI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black-market for years.

50.     In light of recent high profile cyber security incidents at healthcare partners and provider companies, Defendants were, or should have been, aware of the severe and impending threat of a cyberattack and cybercriminals' interest in stealing health related data such as that contained in the HSPI.

51.     For example, some recent notable healthcare data breaches include: American Medical Collection Agency (25 Million patients, March 2019), University of Washington Medicine (974,000 patients, December 2018), Florida Orthopedic Institute (640,000 patients, July 2020), Wolverine Solutions Group (600,000 patients, September 2018), Oregon Department of Human Services (645,000 patients, March 2019), Elite Emergency Physicians (550,000 patients, June 2020), Magellan Health (365,000 patients, April 2020), and BJC Health System (286,876 patients, March 2020).

52.     DNA testing companies likewise have been the victims of cybercriminals due to inadequate security measures.  In July 2020, the DNA collection company GEDmatch was the victim of a cybersecurity breach that exposed the DNA profiles of over one million people.  In February 2023, the genetic testing firm DNA Diagnostic Center reached a settlement with states' attorneys general in Ohio and Pennsylvania after data of over 2.1 million people who had undergone genetic testing across the United States was exposed.  Shortly after that data breach , users of MyHeritage, a genealogy website in Israel, announced that some of its users had been subjected to a sophisticated phishing attack that was executed utilizing data illegally obtained from the GEDmatch hack.

53.     The increase in cyberattacks, and the attendant risk of future attacks, is widely known to the public and was known by Defendants.

54.     As a result of recent large-scale data breaches, thieves and cybercriminals have openly posted stolen credit card numbers, social security numbers, and even patients' private photos and scans taken by their own doctor for medical diagnostic purposes.

55.     Thieves can use this HSPI to open new financial accounts, incur charges in another person's name on those new accounts, take out loans in another person's name, and incur charges on existing accounts.

56.     Identity thieves can use HSPI to perpetuate other crimes, such as government fraud such as obtaining drivers licenses and identification cards, obtaining government benefits and committing tax fraud.

57.     In addition, drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers purchase HSPI on the black market for the purpose of target-marketing their products and services to victims themselves.

58.     The consequences of failing to secure HSPI and the theft of the same can be long lasting.  Fraudulent actors may use the HSPI and then sell it to other criminals.  Criminals may not take action immediately.  Instead, they may wait to exploit the stolen HSPI hoping that as time

passes the fraud is less likely to be immediately detected.  Thus, once HSPI is stolen, its fraudulent use may initially be unknown and the damage that fraud causes thereafter can last for years.

59.    Moreover, the HSPI unlawfully accessed in the Data Breach contains information concerning minor children, and the infiltration of the same creates unique harms.  The theft of a child's identity is lucrative to a cybercriminal because it can remain undetected for years, if not decades.  Without regular monitoring, a child's identity that has been stolen may not be discovered until they are preparing to go to college, start applying for student loans or trying to get their first credit card.  By then, the damage is done and the now young adult will need to go through the time and expense of proving that their identity was indeed stolen and the potential difficulty of determining the scope of what may be a years – if not an over decade – old theft.

60.    Individuals are especially concerned with protecting the privacy of their Social Security numbers ("SSN"), which are difficult to change and are mechanisms through which criminals can commit identity theft.  Moreover, even if one is finally able to obtain a new SSN, that change is not likely to resolve the problem of identity fraud.  Credit agencies, other state and federal government agencies (the IRS, the department of motor vehicles, for example) all may have records associated with the stolen SSN.

61.    Further, illegal use of HSPI such as that collected by Defendants could be used by hate groups and other bad actors to discriminate and target minority groups.  As U.S. Senator Bill Cassidy has noted, "Genetic information is particularly sensitive, carrying health and personal identifying information that can be used against its owners."  Sen. Cassidy noted that the posting by Golem comes "at a time of increasing rates of global antisemitism and anti-Asian hate, which can be leveraged to draw higher prices for the information and increase the threat from potential evildoers."

62.    As the HSPI stolen in the Data Breach also identifies relatives of the victims of the theft, thieves also can use the data to target relatives of the victims, thus further expanding the pool of victims of the Data Breach.

63.     In addition, as certain of the HSPI, including user genetic information, cannot be replaced and is immutable, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach.  Those victims can easily cancel or close credit and debit cards account.  Here, millions of victims are completely helpless.

64.     Despite: (a) the myriad public notices concerning data breaches, including data breaches in the DNA collection industry and healthcare industry; (b) the well-known legal requirements and industry standards concerning the HSPI that it collects and maintains; (c) its assurances that it could and would keep 23andMe users' data secure and private; and (d) its knowing the significant and long-lasting harms that victims of HSPI theft would suffer if adequate and reasonable security measures were not employed; 23andMe failed to take the reasonable steps appropriate to prevent the compromise and theft of the HSPI of Plaintiffs and Class Members.

65.     Moreover, even when 23andMe became aware of the Data Breach, Defendants continued to fail to take adequate measures.  23andMe did not immediately notify all of its customers, or even the victims of the breach.  23andMe did not take prompt security measures.

66.     Defendants willfully, negligently or with reckless disregard, failed to take adequate and reasonable security measures to ensure that the HSPI was secure and that its network systems were safe from intrusion.  Defendants made knowingly false claims of superior security practices and caused Plaintiffs and Class Members to rely on those contentions and transact business with 23andMe based upon those misrepresentations.  Defendants failed to disclose that 23andMe had inadequate security protocols in place and that the HSPI that it collected and maintained was at risk as a result.  Defendants failed to take known, standard, reasonably available measures to protect Plaintiffs and Class Members' HSPI.  In addition, Defendants failed to provide Plaintiffs and Class Members with prompt and adequate notice of the Data Breach.

67.     Further, and despite causing Plaintiffs and Class Members actual harm by failing to take reasonable and adequate security measures with regard to their HSPI, 23andMe placed the

burden of taking action on the Data Breach upon the Plaintiffs and Class Members, merely providing that all of victims of the Data Breach self-help steps.

## V.    CLASS ALLEGATIONS

68.    Plaintiffs seeks certification of the following Classed under Rules 23(a), (b)(1), (b)(2), (b)(3) and/or (c)(4) of the Federal Rules of Civil Procedure:

**Nationwide Adult Class:**

All adult individuals in the United States whose HSPI was exposed to unauthorized third parties as a result of the Data Breach.

**Nationwide Minor Child Class:**

All minor children in the United States whose HSPI was exposed to unauthorized third parties as a result of the Data Breach (the Nationwide Adult Class and the Nationwide Minor Child Class are sometimes referred collectively hereto as the "Class" or "Class Members").

69.    Excluded from the Class are Defendants, Defendants' subsidiaries and affiliates, their officers, directors and members of their immediate families, and any entity in which any Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party; all consumers who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, their immediate family members, and chambers staff.

70.    Plaintiffs reserves the right to modify or amend the definition of the Class and/or add Subclass(es) before the Court determines whether certification is appropriate.

71.    The Class meets the criteria for certification under Rules 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

72.    **Numerosity:** Class members are too numerous to feasibly be joined in a single lawsuit given that the Class consists of likely millions of individuals whose HSPI was infiltrated or exposed to unauthorized third parties.  The exact number and identities of the members of the proposed Class are unknown at this time and are within the exclusive knowledge of Defendants

and can be ascertained through Defendants' records. As such, that information is not otherwise available to Plaintiffs and the Class.

73.    **Commonality and Predominance:** Common questions of fact and law exist with respect to all Class members and predominate over any questions affecting only individual members.  The common questions include, but are not necessarily limited to:

A.    Whether 23andMe engaged in the misconduct alleged;

B.    Whether 23andMe implemented and maintained data security measures that were inadequate to protect Plaintiffs and Class Members' HSPI;

C.    Whether 23andMe knew or should have known of the susceptibility of its systems to a data breach and the Data Breach.

D    Whether 23andMe's security practices and procedures to protect its systems were reasonable in light of industry standards and recommendations by data security experts;

E.    Whether 23andMe's failure to implement adequate and reasonable security measures allowed the Data Breach to occur;

F.    Whether 23andMe's complied with its own policies and procedures and applicable laws, regulations and industry standards relating to data security;

G.    How and when 23andMe learned of the Data Beach;

H.    Whether 23andMe owed a duty to Plaintiffs and Class Members and whether 23andMe breached that duty;

I.    Whether 23andMe's acts and omissions were or resulted in the proximate cause of the Data Breach;

J.    Whether 23andMe provided Plaintiffs and Class Members with adequate notice of the Data Breach and that their HSPI had been compromised;

K.    Whether 23andMe adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

L.    Whether 23andMe engaged in unfair or unlawful acts and practices;

M.    Whether Plaintiffs and Class Members were injured and suffered damages as a result of 23andMe's conduct; and

N.    Whether Plaintiffs and Class Members are entitled to relief and the measure of such relief.

74.    **Typicality:** Plaintiffs claims are typical of the claims of other Class members, as all members of the Class were uniformly affected by Defendants' wrongful conduct in violation of law as complained of herein.

75.    **Adequacy:** Plaintiffs will fairly and adequately represent the Class's case interests. Plaintiffs have no conflicts with any other member of the Class.  Plaintiffs have retained counsel who are competent and have experience in prosecuting complex class-actions, consumer-protection lawsuits, and data privacy litigation.

76.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against 23andMe, so it would be impracticable for Class members to individually seek redress for 23andMe's wrongful conduct.  Even if all Class members could afford litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class-action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

77.    **Injunctive and Declaratory Relief:** 23andMe acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.  The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for 23andMe.  Such individual actions would

create a risk of adjudications which would be dispositive of the interests of other Class members and impair their interests. 23andMe has acted and/or refused to act on grounds generally applicable to the Class as a whole, making final injunctive relief or corresponding declaratory relief appropriate.

**VI.    CAUSES OF ACTION**

**COUNT ONE**
**Negligence**
**(On Behalf of the Nationwide Adult Class and Nationwide Minor Child Class)**

78.    Each and every allegation of the preceding paragraph 1 through 77 are incorporated in this Count with the same force and effect as though fully set forth herein.

79.    Defendants required Plaintiffs and Class Members to provide Defendants with their HSPI in order to use Defendants' services.

80.    Defendants knew or should have known that the HSPI was private and confidential.

81.    Defendants knew or should have known the risks inherent in collecting and storing the HSPI, the vulnerabilities of 23andMe's security systems, the importance of data security generally and collecting and maintain the HSPI specifically.

82.    At all times herein relevant hereto, Defendants owed Plaintiffs and Class Members a duty of care, to, among other things, act with reasonable care to secure and safeguard their HSPI using commercially reasonable methods to do so. That duty arose from the sensitivity of the HSPI. That duty included, among other things, designing, maintaining, monitoring and testing Defendants' and its agents', partners' and independent contractors' systems, protocols and practices to ensure that Plaintiffs' and Class Members' HSPI was adequately secured from unauthorized access. Federal law and regulations, as well as Defendants' privacy policy, acknowledge Defendants' duty to adequately protect Plaintiffs' and Class Members' HSPI.

83.    Defendants had a special relationship with Plaintiffs and Class Members due to their having been entrusted with Plaintiffs and Class Members' HSPI.

84.     Plaintiffs' and Class Members' willingness to contract with Defendants and entrust Defendants with their confidential and sensitive HSPI was predicated on the understanding that Defendants and their agents would undertake adequate security precautions.

85.     Defendants knew or should have known that their systems and security protocols were inadequate to safeguard Plaintiffs' and Class Members' user accounts.

86.     Defendants breached their duty of care to Plaintiffs and Class Members by, among other things, failing to implement and/or maintain reasonable security measures adequate to protect their user accounts and HSPI and failing to provide adequate and timely notice of the Data Breach.

87.     But for Defendants' breaching the duties they owed to Plaintiffs and Class Members, their user accounts would not have been accessed by unauthorized individuals.

88.     Plaintiffs and Class Members were foreseeable victims of Defendants' inadequate data security practices.  Defendants knew or should have known that their systems were vulnerable to intrusion.  Further, they knew or should have known that the way that data was linked, managed and left insecure made any data breach more harmful by a matter of multiples because intrusion into one account could result in the breach of data to linked accounts.

89.     Defendants knew or should have known that the unauthorized access would cause damage to Plaintiffs and Class Members.

90.     As a result of Defendants' failure to prevent unauthorized access to user accounts, Plaintiffs and Class Members have suffered grave injury.

91.     As a direct and proximate result of 23andMe's negligence, Plaintiffs and Class Members have been injured and suffered harm.

92.     The aforementioned injury was the reasonably foreseeable result of Defendants' actions and omissions and breach of 23andMe's duty of care to Plaintiffs and Class Members.  But for Defendants' negligence, unauthorized third parties would not have engaged in the theft of the Plaintiffs and Class Members' HSPI nor would Plaintiffs and Class Members suffered the damages and continuing harm resulting from the same.

93.     Therefore, Plaintiffs and Class Members are entitled to damages and other relief in an amount to be determined at trial.

94.     Plaintiffs and Class Members also are entitled to all such other relief as the Court may deem just and proper.

## COUNT TWO
### Negligence *Per Se*
**(On Behalf of the Nationwide Adult Class and Nationwide Minor Child Class)**

95.     Each and every allegation of the preceding 1 through 77 are  incorporated in this Count with the same force and effect as though fully set forth herein.

96.     In order to use their services, Defendants required Plaintiffs and Class Members to submit their HSPI for Defendants' collection, storage and use.

97.     Defendants knew or should have known of the risks inherent in collecting and storing Plaintiffs' and Class Members' HSPI.

98.     Section 5 of the FTC Act prohibits companies from using any "unfair method of competition or unfair or deceptive act or practice in or affecting commerce."

99.     In addition, various states in which victims of the Data Breach reside require that Defendants protect HSPI from unauthorized intrusion and disclosure and require timely notification of victims of such data breaches.

100.     Pursuant to FTC Act 15 U.S.C. § 45(a)(1), California's Consumer Privacy Act, Cal. Civ. Code §1798.100 (West) Cal. Civ. Code §1798.150, and California's Genetic Information Privacy Act, Cal. Civ. Code §56.18 (West), Defendants had the duty to implement and maintain reasonable security measures in compliance with industry standards.

101.     Defendants violated FTC rules and regulations, as well as applicable law, failing to comply with industry standards regarding HSPI and by failing to timely and adequately notify Plaintiffs and Class Members of the Data Breach.

102.     Each of Defendants' statutory violations of Section 5 of the FTC Act and other applicable statutes, rules and regulations constitute negligence *per se.*

103.    Plaintiffs and Class Members are within the category of persons that the FTC Act and the statutes, rules and regulations referenced above were intended to protect.  Further, the harm that Plaintiffs and Class Members have suffered as a result of the Data Breach are of the type that the FTC Act and aforementioned laws, rules and regulations were intended to prevent.

104.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class Members have been damaged, continue to suffer damages, and are subject to continued risk of harm, including continued exposure of their HSPI in Defendants' possession and are entitled to damages in an amount to be determined at trial.

## COUNT THREE
### (Negligent Hiring, Retention, and Supervision)
### (On Behalf of the Nationwide Adult Class and Nationwide Minor Child Class)

105.    Plaintiffs incorporate by reference the allegations in 1 through 77 above as though fully set forth herein.

106.    At all material times herein, Defendants agents, officers, and employees, including, but not limited to, those directly or indirectly responsible for or involved in allowing unauthorized access to Plaintiffs' HSPI, were under Defendants' direct supervision and control.

107.    Upon information and belief, Defendants negligently hired, retained, controlled, trained, and supervised the officers, agents, and employees under its control, or knew or should have known that such officers, agents, and employees were negligently hired, retained, controlled, trained, and supervised with regard to unauthorized access to customer accounts.

108.    Upon information and belief, Defendants negligently failed to implement systems and procedures necessary to prevent its officers, agents, and employees from allowing or obtaining unauthorized access to customer accounts, including that of Plaintiffs.

109.    Upon information and belief, Defendants' negligent hiring, retention, control, training, and supervision allowed the unauthorized access to customers' accounts resulting in damage to Defendants customers and foreseeable victims in the public at large, including Plaintiffs.

110.    Given Defendants' knowledge of and experience with HSPI and the widespread knowledge surrounding the prevalence and harm of data breaches, both generally and in the DNA collection industry specifically, Defendants' failure to exercise reasonable care in hiring, retaining, controlling, training, and supervising its officers, agents and employees was a breach of its duty to its customers, including Plaintiffs.

111.    Defendants' duty to its customers and foreseeable victims to protect its customers' data from unauthorized access is required by federal and state law.

112.    It was entirely foreseeable to Defendants that unauthorized persons would attempt to gain unauthorized access to Defendants customers' data and, despite this, Defendants failed to implement sufficient safeguards and procedures to prevent its officers, agents and employees from granting or obtaining such unauthorized access.

113.    Upon information and belief, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized and/or ratified the conduct of its officers, agents and employees.

114.    As a direct consequence of Defendants' negligent hiring, retention, controlling, training, and supervision of its officers, agents and employees, who enabled or obtained the unauthorized access to Plaintiffs' accounts, Plaintiffs were damaged through the loss of millions of dollars and the breach of HSPI.

115.    Plaintiffs and Class Members also are entitled to all such other relief as the Court may deem just and proper.

**COUNT FOUR**
**(Breach of Contract and the Implied Covenant of**
**Good Faith and Fair Dealing)**
**(On Behalf of the Nationwide Adult Class)**

116.    Plaintiffs incorporate by reference and realleges 1 through 77 contained above, as though fully set forth herein.

117.    Plaintiffs and the Nationwide Adult Class Members have purportedly entered into a written contract, the Terms of Service with Defendants.  23andMe users were presented with the

Terms of Service on a take-it-or-leave it basis and had no opportunity to negotiate any of the specific terms or provisions thereunder.

118.    Every contract, including the Terms of Service, contains an implied duty of good faith and fair dealing.

119.    Defendants breached the Terms of Service and the implied covenant of good faith and fair dealing by, among other things, failing to discharge their obligations and provide the services they promised in exchange for the fees they charged Plaintiffs and the Class Members.

120.    Defendants breached the Terms of Service and the implied covenant of good faith and fair dealing by failing to protect and safeguard its customers' HSPI.

121.    As a result of Defendants' breach of its contractual duties, obligations and/or promises arising under the Terms of Service and the implied covenant of good faith and fair dealing, Plaintiffs and the Nationwide Adult Class Member were damaged by the Data Breach and the loss of their exclusive right to control the use and dissemination of the HSPI.

122.    Consequently, Plaintiffs and the Nationwide Adult Class Member are entitled to damages in an amount to be determined at trial.

123.    Plaintiffs and Nationwide Adult Class Members also are entitled to all such other relief as the Court may deem just and proper.

**COUNT FIVE**
**Breach of Implied Contract**
**(On Behalf of the Nationwide Class)**

124.    Each and every allegation of the preceding paragraph 1 through 77 are incorporated in this Count with the same force and effect as though fully set forth herein.

125.    In order to use their services, Defendants required Plaintiffs and Nationwide Adult Class Members to submit their HSPI for Defendants' collection, storage and use.

126.    Defendants solicited and invited Plaintiffs and Nationwide Adult Class Members to submit their HSPI to Defendants.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

127.     Plaintiffs and Nationwide Adult Class Members entrusted their HSPI to Defendants and entered into implied contracts with Defendants wherein Defendants agreed to utilize reasonable data security measures compliant the law and industry standards to keep their HSPI secure and safe.

128.     Plaintiffs and Nationwide Adult Class Members would not have paid Defendants, nor would they have provided Defendants their HSPI, unless Defendants agreed to protect their HSPI and take reasonable data security measures compliant with industry standards to safeguard the same.

129.     Defendants breached their implied contracts with Plaintiffs and Nationwide Adult Class Members by failing to employ reasonable data security measures adequate to protect their HSPI and by failing to provide timely and accurate notice to them that their HSPI had been compromised through the Data Breach.

130.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Nationwide Adult Class Members have been damaged.

131.     Plaintiffs and Nationwide Adult Class Members therefore are entitled to damages in an amount to be determined at trial.

132.     Plaintiffs and Nationwide Adult Class Members also are entitled to all such other relief as the Court may deem just and proper.

**COUNT SIX**
**Invasion of Privacy—Intrusion Upon Seclusion**
**(On Behalf of the Nationwide Class and Nationwide Minor Child Class)**

133.     Each and every allegation of the preceding paragraph 1 through 77 are incorporated in this Count with the same force and effect as though fully set forth herein.

134.     Plaintiffs asserts claims for intrusion upon seclusion and so must plead: (1) that Defendants intentionally intruded into a place, conversation, or matter as to which Plaintiffs and Class Members had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

135.     Plaintiffs and Class Members had a reasonable expectation of privacy in their HSPI.

136. Plaintiffs and Class Members did not consent to, authorize, or know about Defendants' security inadequacies and did not consent to, authorize or know about Defendants' interference with the privacy of their HSPI.

137. Defendants' intrusion on Plaintiffs' and Class Members' solitude or seclusion without consent would be highly offensive to a reasonable person.

138. Plaintiffs and Class Members reasonably expected that their HSPI would be protected and would not be accessible to unauthorized third parties.

139. Defendants' conduct was highly offensive because it violated expectations of privacy that have been established by social norms.

140. Privacy polls and studies show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is collected or shared.

141. Given the nature of the data Defendants collected and allowed to be accessed by unauthorized third parties, HSPI, this kind of intrusion would be (and in fact is) highly offensive to a reasonable person.

142. Defendants' conduct was intentional to the extent that the risks of a data breach generally, and the Data Breach in particular, were well known within the industry and Defendants intentionally failed to implement and maintain reasonable security measures adequate to protect Plaintiffs' and Class Members' HSPI.

143. As a result of Defendants' actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

144. Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to just compensation, including monetary damages.

145. Plaintiffs and Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm

to their privacy interests as well as a disgorgement of profits made by Defendants as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

146.    Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendants' actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

147.    Plaintiffs and Class Members also are entitled to all such other relief as the Court may deem just and proper.

**COUNT SEVEN**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class and Nationwide Minor Child Class)**

148.    Each and every allegation of the preceding paragraph 1 through 77 are incorporated in this Count with the same force and effect as though fully set forth herein.

149.    Defendants received benefits from Plaintiffs and Class Members in the form of payments made for the purchase of genetic testing kits and in the form of the HSPI that Plaintiffs and Class Members provided to Defendants.

150.    Defendants knowingly received economic, intangible, and other benefits, including substantial monetary compensation from Plaintiffs and Class Members.

151.    Defendants unjustly retained those benefits at the expense of Plaintiffs and Class Members because Defendants' conduct damaged Plaintiffs and Class Members, all without providing any commensurate compensation to Plaintiffs and Class Members.

152.    The benefits that Defendants derived from Plaintiffs and Class Members rightly belong to Plaintiffs and Class Members.

153.    It would be inequitable under unjust the enrichment principles of equity and good conscience, in California and every other state, for Defendants to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

154.    Neither Plaintiffs nor Class members have an adequate remedy at law.  Monetary damages alone are incapable of restoring Plaintiffs or Class Members the exclusive right to control the use and dissemination of the HSPI, which has been compromised as a direct and proximate result of the Data Breach.

155.    Defendants should be compelled to disgorge, in a common fund for the benefit of Plaintiffs and Class Members, all unlawful or inequitable proceeds that Defendants received, and such other relief as the Court may deem just and proper.

**COUNT EIGHT**
**Declaratory Judgment**
**(On Behalf of the Nationwide Class and Nationwide Minor Child Class)**

156.    Each and every allegation of the preceding paragraph 1 through 77 are  incorporated in this Count with the same force and effect as though fully set forth herein.

157.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  The Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described herein.

158.    An actual controversy has arisen regarding Defendants' duties to its customers due to the Data Breach regarding Defendants' duty to reasonably safeguard Plaintiffs' and Class Members' HSPI.  Further, an actual controversy has arisen as to whether Defendants is taking adequate measures to protect and safeguard its customers' HSPI from further data breaches, compromise and unauthorized third parties.

159.    Plaintiffs and Class Members allege that Defendants' data protection measures remain inadequate.  Defendants have denied the same.

160.    Plaintiffs and Class Members continue to suffer harm due to the compromise of their HSPI and remain at risk that their HSPI will be compromised again in the future.

161.    Neither Plaintiffs nor Class Members have an adequate remedy at law.  Monetary damages alone are incapable of restoring Plaintiffs or Class Members to the exclusive right to

control the use and dissemination of their HSPI, the compromise of which is a bell that cannot be unrung.

162.    A judicial declaration is necessary and appropriate so the parties may ascertain their rights, duties, and obligations.

163.    Accordingly, Plaintiffs and Class Members are entitled to a judicial declaration that:

        A.    Defendants continue to owe Plaintiffs and Class Members a legal duty to secure the HSPI;

        B.    Defendants continue to breach their legal duty by failing to implement and maintain adequate security measures to protect the HSPI;

        C.    Defendants' ongoing breaches of their legal duty are causing continuing harm to Plaintiffs and Class Members.

164.    The Court also should issue injunctive relief requiring Defendants to employ adequate security protocols, consistent with industry standards Plaintiffs' and Class Members' HSPI.

165.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable harm without an adequate remedy at law, should another data breach occur.  The risk of such a data breach is real, immediate and substantial.  Defendants were fully aware of the risks of a data breach and, notwithstanding the aforementioned, still failed to implement or maintain reasonable data security measures sufficient to protect Plaintiffs' and Class Members' HSPI.  Moreover, Defendants compounded the harm by failing to inform Plaintiffs and Class Members about the Data Breach promptly and adequately.

166.    If another data breach should occur, Plaintiffs and Class Members will lack an adequate remedy at law because many of the resulting injuries are not readily quantified and Plaintiffs and Class Members will be forced to bring multiple lawsuits to rectify the same conduct. Further, Plaintiffs and Class Members likely will be subjected to substantial identity theft and other damage.

167.    The hardship to Plaintiffs and Class Members, if an injunction is not issued, exceeds the hardship, if any, to Defendants if an injunction is issued.  The cost to Defendants of complying with an injunction by employing the reasonable and adequate data security measures that it should have employed prior to the Data Breach is relatively minimal.  Further, Defendants have a pre-existing legal obligation to use such measures.

168.    The issuance of the requested injunction will be in furtherance of the public interest. Such an injunction would benefit the public by preventing another data breach and prevent further injuries that would result to Plaintiffs and Class Members whose HSPI would be compromised.

## COUNT NINE
### Violation of California's Unfair Competition Law
### (On Behalf of the Nationwide Class and Nationwide Minor Child Class)

169.    Each and every allegation of the preceding paragraph 1 through 77 are  incorporated in this Count with the same force and effect as though fully set forth herein.

170.    Plaintiffs and Class Members and Defendants are "persons" within the meaning of Plaintiffs and Cal. Bus. & Prof. Code §17201.

171.    The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 (West) prohibits unfair competition, including, but not limited to, practices which are "unlawful, unfair or fraudulent."

172.    The UCL also protects the public from fraud, deceit, and unlawful conduct. Defendants' violation of any law constitutes an unlawful business practice under the UCL.

173.    Defendants engaged in unfair and unlawful actions by failing to implement and maintain reasonable data security measures consistent with industry standards and inadequate to protect Plaintiffs' and Class Members' HSPI.  These unfair and unlawful actions occurred in connection with Defendants' trade or business.

174.    Defendants have deprived Plaintiffs and Class Members of their right to control the use and dissemination of their HSPI and put them at risk of identity theft and other harms. .

175.     As a direct and proximate result of Defendants' unfair and unlawful practices and their violation of the UCL, Plaintiffs and Class Members have suffered injury in fact, including the loss of property and money.

176.     Plaintiffs are entitled to all relief afforded by the UCL, including, but not limited to injunctive relief and restitution and such other relief as the Court may deem just and proper..

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs and Class Members pray for judgment against Defendants as follows:

a.     An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Nationwide Adult Class and the Nationwide Minor Child Class be entered as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class as requested herein;

b.     A judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual and statutory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper, including injunctive and declaratory relief;

c.     Pre-judgment and post-judgment interest; and

d.     Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs, individually and on behalf of the Class, demand a trial by jury on all issues so triable.

Dated: December 15, 2023

*/s/ Azra Mehdi*

AZRA Z. MEHDI (SBN 220406)
THE MEHDI FIRM, PC
95 Third Street
2nd Floor #9122
San Francisco, CA 94103
Ph/Fax: (415) 905-8880
Email: azram@themehdifirm.com

HERMAN JONES LLP
John C. Herman (to seek admission pro hac vice)
Candace N. Smith (to seek admission pro hac vice)
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA 30326
Telephone: (404) 504-6500
Facsimile: (404) 504-6501
Email: jherman@hermanjones.com
Email: csmith@hermanjones.com

*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL